# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **FRANK A. SKINNER** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 05-2237 (RWR)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **USA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE

Federal defendants, the United States of America, the Federal Bureau of Prisons ("BOP"), and the ten individual BOP defendants named in their official and personal capacities: Harley Lappin, BOP Director; Mr. Ramirez, BOP Clinical Director; Kim White, BOP Mid-Atlantic Regional Director; G. Maldonado, Warden USP Atlanta; A.W. Yark[1]; Mahmoud Ittayem, Supervisory Physician Assistant USP Atlanta; Richard Craig, Correctional Counselor USP Atlanta; Al Haynes, Warden USP Hazelton; Vandhna Puri Sharma, Health Services Administrator USP Hazelton; and Harold Boyles, Assistant Health Services Administrator USP Hazelton, by and through undersigned counsel, hereby respectfully move, pursuant to Fed. R. Civ. P. 12 (b)(1), (2), (3), (4), and (6), for dismissal of this action for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, insufficiency of process, and failure to state a claim upon which relief may be granted.[2]  In the alternative, in the event that the Court

---

[1]  The Federal Bureau of Prisons does not have an employee named A.W. Yark.  <u>See</u> Declaration of Renee Brinker-Fornshill.

[2]  Defendants Lappin, Ramirez, White, Maldonado, Yark, Ittayem, Craig, Haynes, Sharma, and Boyles appear in their official capacities only.  They have not been served

determines not to dismiss this case, defendants move pursuant to 28 U.S.C. § 1391(b) and 28

U.S.C. §§ 1404(a), that the Court exercise its discretion to transfer venue to the Northern District

of Georgia or the Northern District of West Virginia, the judicial districts where the alleged

incidents took place.

In support of this motion, the Court is respectfully referred to the accompanying

Memorandum of Points and Authorities and the declaration of Renee Brinker-Fornshill, Assistant

General Counsel for the Federal Bureau of Prisons.  A proposed Order consistent with the relief

sought herein is attached.

Respectfully submitted,


____/s/_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


____/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
Judiciary Center Building
555 4th Street, N.W. – Civil Division
Washington, D.C.  20530
(202) 307-1249
(202) 514-8780 (facsimile)

---

personally so do not appear to be party in their personal capacity, at this time and defendants
should be deemed to preserve all defenses available to them, including insufficiency of service of
process and immunity from suit.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **FRANK A. SKINNER** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 05-2237 (RWR)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **USA, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR**
**IN THE ALTERNATIVE, TO TRANSFER**

Defendants hereby submit this memorandum of law in support of its motion, pursuant to Fed.
R. Civ. P. 12(b)(1), (b)(2), (b)(3), (b)(4), and 12(b)(6).

**I.    Introduction**

Plaintiff, *pro se* in this action, is federal inmate Frank A. Skinner, Register Number 02727-
025, presently incarcerated at the Hazelton United States Penitentiary in Preston County, West
Virginia.  See Ex. A (SENTRY Public Information Inmate Data).  Plaintiff is currently serving a
262-month sentence for conspiracy to distribute cocaine and possession with intent to distribute
cocaine in violation of 21 U.S.C. §§ 846, 841.  His projected release date is July 14, 2010.  See
SENTRY Public Information Inmate Data.

**Factual Background**

Plaintiff filed this current action on November 11, 2005 pursuant to Bivens.[3]  Plaintiff also
brings this action pursuant to 28 U.S.C. §§ 2671-80, the Federal Tort Claims Act (FTCA).  Plaintiff

---

[3]   Bivens v. Six Unknown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

states that while exercising at United States Penitentiary in Atlanta, Georgia (USP Atlanta) he received an injury to his groin and leg areas. See Compl. pg. 3. Plaintiff reported the incident to medical staff seven days later on January 6, 2005. See Compl. pg. 11. Plaintiff was evaluated, treated, and instructed not to exercise for 30 days. Id.

On April 14, 2005, plaintiff was transferred to USP Hazelton. Id. Plaintiff alleges he was transferred because he had filed litigation against staff (presumably at USP Atlanta). See Compl. pg. 3. On April 21, 2005, plaintiff went to the Hazelton clinic with continued complaints and was evaluated, diagnosed, treated by medical staff, and given antibiotic therapy and Naprosyn 250 mg. See Compl. pg. 11. On May 3, 2005, plaintiff was again treated and evaluated. Id. He was given Tylenol 325 mg, instructed not to do strenuous activities, and was given a consult for further evaluation. Id. On May 18, 2005, plaintiff reported to sick-call continuing to complain of pain. Id. Plaintiff was treated and instructed to apply ice three times daily. Id. On May 31, 2005, plaintiff was examined by the Regional Medical Consultant. See Compl. pg. 9. A diagnosis of epididymitis, or inflammation, or infection of a duct that lies on the posterior surface of the testicle was completed. Id. Plaintiff was given an oral anti-inflammatory medication for a period of 60 days and told to wear an athletic supporter and refrain from heavy lifting. Id. Plaintiff claims, however, that the BOP showed deliberate indifference to his medical needs on two occasions during a period of 5-6 months at USP Atlanta. See Compl. pg. 12.

In the meantime, on May 10, 2005, plaintiff filed an informal resolution complaint at Hazelton requesting immediate medical care including, but not limited to, x-rays and a G.I. consult. See Compl. at 14. In this complaint he alleges that he was denied a BP-10 form to complete exhaustion procedures on the USP Atlanta claim. Id. On May 13, 2005, plaintiff received a

2

response to the informal resolution which stated that he had been evaluated by medical staff on May 3, 2005 and a treatment plan had been advised. Id. The response also stated that a consult was written for further treatment, but that plaintiff's issue was not one that required immediate action. Id.

On May 12, 2005, plaintiff filed a regional appeal (#374890-R1) for his medical records and for emergency treatment. See Compl. at 13. The Mid-Atlantic Regional Office mailed a rejection notice for claim #374890-R1 on May 13, 2005 and stated that plaintiff's request was untimely and that institution and CCC requests must be received within 20 days of the event. Id. It also stated that if plaintiff was suffering from an ongoing medical issue, he could resubmit at the institution level on an 81/2 form. Id.

On May 18, 2005, plaintiff filed an inmate administrative remedy request at Hazelton, #376789-F1, for medical treatment for a left side groin injury. On May 24, 2005, Warden Haynes denied plaintiff's administrative remedy request for immediate emergency treatment. See Compl. at 11.

On May 23, 2005, plaintiff claims he hand-delivered an Inmate Request to release medical records to defendant Sharma. See Skinner Affidavit. Written documentation shows, however, that plaintiff made an "inmate request to staff" for a copy of his medical records on May 28, 2005. See Compl. at 15.

On May 24, 2005, plaintiff filed an administrative tort claim under the FTCA (P.I. Tort No. TRT-MXR-2005-03222). See Compl. at 16. On June 13, 2005, plaintiff received written notification of his tort claim from the BOP Mid-Atlantic Regional Office. Id. It is unclear if the tort claim has been resolved, but plaintiff notes in his affidavit that "Mid-Atlantic Region Director K.

3

White response were the same inconsistency on the grievance and tort claim." <u>See</u> Skinner Affidavit p. 2.

On May 30, 2005, plaintiff filed a Regional Administrative Remedy Appeal, #376789-R1, of Warden Hayes' denial for emergency medical treatment. <u>See</u> Compl. at 10. On June 14, 2005, the Mid-Atlantic Regional Office rejected plaintiff's appeal. <u>See</u> Compl. at 9. The Regional Office concluded that there was no clinical evidence to support a request for emergency relief in the form of a consult with a gastrointestinal specialist, x-rays, neurological exam, or MRI studies of plaintiff's testicles, groin area, and left leg. <u>Id.</u>

On June 17, 2005, plaintiff filed a Central Office Administrative Remedy Appeal (#376789-A1) in response to the Regional Office's denial of his claim. <u>See</u> Compl. at 8. On July 12, 2005, plaintiff's appeal was rejected. <u>See</u> Compl. at 7. The Central Office determined that plaintiff had received prompt, professional medical care. <u>Id.</u> On August 4, 2005, plaintiff was seen by Dr. Langley of the Medical Science Center Hospital in West Virginia. <u>Id.</u> This denial exhausted plaintiff's administrative remedies on this particular claim.

At some point after his arrival at USP Hazelton, plaintiff claims that defendant Boyles stopped an application for a walking cane and defendant Sharma refused to release his medical records for an examination by a urologist. <u>See</u> Compl. at 2 and 17. Plaintiff alleges that he filed a sensitive complaint, #377822-RI, against defendant Boyles, and claims that this grievance was blocked (#387027-FI) and that BOP medical staff listed an ultrasound that was contrary to the conclusion of an outside physician. <u>See</u> Skinner Affidavit p. 2-3.

Plaintiff also challenges the new law that requires inmate co-payment for medical services. <u>See</u> Compl. at 3. Plaintiff alleges that he had an appointment scheduled for October 5, 2005 at the

4

Monogalia General Hospital that he did not attend due to a lack of financing.  <u>Id.</u>  Finally, plaintiff filed a FOIA request on October 21, 2005 for his medical records.  <u>See</u> Skinner Affidavit.  On December 21, 2005, Regional Counsel wrote plaintiff and told him that the BOP would release 3 pages of material in response to his FOIA request.  <u>See</u> Attach 2, Pl. Affidavit.

Plaintiff seeks $1 million in damages as well as a litany of medical treatments.  <u>See</u> Compl. at 3.  He also seeks unspecified damages for (1) medical negligence; (2) pain and suffering; (3) and alleged violation of the Fifth and Eighth Amendment rights.  <u>Id.</u>  Finally, it appears plaintiff is requesting the history of his administrative remedy claims and an *in camera* review of his medical records.  <u>Id.</u>

## II.    Standard of Review

### A.    Requests for Dismissal

Defendants move for dismissal of plaintiff's complaint under Rule 12(b)(1), lack of subject matter jurisdiction, 12(b)(2), lack of personal jurisdiction, 12(b)(3), improper venue, 12(b)(4), insufficiency of process, and 12(b)(6), failure to state a claim.

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint.  <u>Atchinson v. District of Columbia</u>, 73 F. 3d 418, 421 (D.C. Cir. 1996).  A complaint may be dismissed for failure to state a claim upon which relief may be granted, if the facts pled and reasonable inferences therefrom are legally insufficient to support the relief requested.  <u>Appleton v. United States</u>, 69 F. Supp. 2d. 83, 86 (D.D.C. 1999).  In reviewing a motion to dismiss, whether on grounds of lack of jurisdiction over the subject matter or for failure to state a cause of action, all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the nonmoving party.  <u>Conley v.</u>

5

<u>Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Scheuer v. Rhodes</u>, 416 U.S. 232 (1974).  The court need not, however, accept as true the plaintiff's legal conclusions.  See <u>Taylor v. FDIC</u>, 132 F.3d 753, 762 (D.C. Cir. 1997).  From the facts alleged in the complaint in this case, plaintiff can prove no set of facts that would entitle him to relief.

## III. Argument

### A.    This Court Lacks Personal Jurisdiction Over the Defendants

Plaintiff has not shown that any of the individual BOP defendants named in this lawsuit are residents of the District of Columbia.  Therefore, there is no personal jurisdiction.  Because <u>Bivens</u> suits are brought against government officials in their individual, rather than official capacities, personal jurisdiction over the individual defendants is required to maintain a <u>Bivens</u> claim.  See <u>Robertson v. Merola</u>, 895 F. Supp. 1, 3 (D.D.C. 1995); <u>Deutsch v. U.S. Dept. of Justice</u>, 881 F. Supp. 49, 52 (D.D.C. 1995), <u>aff'd</u>, 93 F.3d 986 (D.C. Cir. 1996).

#### a.  <u>Plaintiff's Burden</u>

It is the plaintiff who bears the burden of pleading the facts necessary to substantiate in personam jurisdiction in this Court.  <u>Kernan v. Kurz-Hastings, Inc.</u>, 175 F.3d 236, 240 (2d Cir. 1999).  As explained by this Court in <u>Edmond v. U.S. Postal Service</u>, 727 F. Supp. 7, 10 (D. D.C. 1989), <u>aff'd in part and rev'd in part</u>, 949 F.2d 415 (D. C. Cir. 1991):

> A plaintiff in district court must plead essential jurisdictional facts and must carry throughout the litigation the burden of showing that he is properly in court.  "If his allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof.  And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence."  <u>McNutt v. General Motors Acceptance Corp.</u>, 298 U.S. 178, 189 (1936).

6

Plaintiff has failed and cannot meet his burden to establish such necessary facts. All individual defendants are moving for their dismissal from this lawsuit based upon lack of in personam jurisdiction, pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure.

### b. <u>D.C. Code §13-423, the "Long Arm" statute</u>

*In personam* jurisdiction may be maintained by the United States District Court for the District of Columbia only if permitted by the "long arm" laws of the District of Columbia. <u>Crane v. Carr</u>, 814 F. 2d 758, 762 (D.C. Cir. 1987). The District of Columbia exercises personal jurisdiction based upon the D.C. Code's "long arm" statute at D.C. Code §13-423 (2000), which states in relevant part:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's--

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

(5) having an interest in, using, or possessing real property in the District of Columbia;

(6) contracting to insure or act as surety . . . ; or

(7) marital or parent and child relationship. . . .

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted

against him.

In the instant case, plaintiff's pleading does not establish proper *in personam* jurisdiction in the United States District Court for the District of Columbia under § 13-423. <u>Crane</u> at 762. The defendants are clearly outside the "long arm" of this statute. <u>See</u> Brinker-Fornshill Decl. They have not transacted business in the District of Columbia, have not contracted to supply services in the District of Columbia, and have not caused any tortious injury in the District of Columbia. *In personam* jurisdiction cannot be predicated on the provisions of the sections (a)(3) and (4) of the "long arm" statute because the plaintiff does not and cannot claim that the federal employees at the federal prisons where he was housed outside the District caused him tortious injury within the District of Columbia. The injuries about which the plaintiff complains occurred at USP Atlanta and USP Hazelton. Therefore, this Court lacks personal jurisdiction over them for activities taking place outside the District. <u>See</u> <u>Farmer v. Moritsugu</u>, 163 F.3d 610 (D.C. Cir. 1998) (local medical staff treating in BOP institutions outside D.C. not subject to personal jurisdiction); <u>Meyer v. Federal Bureau of Prisons</u>, 940 F. Supp. 9 (D.D.C. 1996) (No personal jurisdiction over Bureau of Prisons case manager working in Rochester, Minnesota, sued in D.C. in individual capacity by inmate based upon claimed inaccuracy of prison records).

### c. **In Personam Jurisdiction Requires "Minimum Contacts"**

For the District Court for the District of Columbia to have personal jurisdiction over a non-resident defendant, jurisdiction must be proper under both the District of Columbia long-arm statute and consistent with the demands of due process. <u>United States v. Ferrara</u>, 54 F.3d 825, 828 (D.C. Cir. 1995); <u>Crane v. Carr</u>, 814 F.2d 758, 762 (D.C. Cir. 1987). "Since the District of Columbia's long-arm statute has been held to extend as far as the Due Process Clause allows,

8

Mouzavires v. Baxter, 434 A.2d 988 (D.C. 1981) (en banc), cert. denied, 455 U.S. 1006 (1982), personal jurisdiction exists when the defendant has purposely established minimum contacts with the forum state and when the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.' Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102 (1987)." Wiggins v. Equifax Inc., 853 F. Supp. 500 (D. D.C. 1994). "Plaintiff's claim for relief must arise from the defendants' contacts with the District of Columbia and his 'claims must bear some relation to the acts in the District that are relied upon to confer personal jurisdiction.' [D.C. Code] § 13-423(b). Bayles v. K-Mart Corp., 636 F. Supp. 852, 854 (D.D.C. 1986)." Id. at 502.

The burden is again on the plaintiff to establish that this Court can exercise personal jurisdiction over defendants consistent with the Due Process Clause. Blumenthal v. Drudge, 992 F. Supp. 44, 53 (D. D.C. 1998); GTE New Media Servs. Inc., 199 F.3d 1343, 1347 (D.C. Cir. 2000). Plaintiff in this case has wholly failed to allege such facts, and the allegations against all these defendants do not establish "minimum contacts" necessary to confer personal jurisdiction upon the District Court for the District of Columbia. The mere fact that some of the defendants are employees of the Federal Bureau of Prisons and the Central Office of the agency happens to be in Washington, D.C., is insufficient to establish the requisite "minimum contacts" with the District of Columbia. Cameron v. Thornburgh, 983 F.2d 235, 256 (D.C. Cir. 1993); see James v. Reno, No. 99-5081, 1999 WL 615084 (D.C. Cir. Jul. 2, 1999) (Inmate's security classification and transfer request made in Texas; both federal prisons at issue located in Texas; no injury suffered in the District of Columbia; mere fact that White and Snider are employees of the Bureau of Prisons based in D.C. insufficient to establish requisite "minimum contacts" with

9

District); <u>Meyer v. Reno</u>, 911 F. Supp. 11, 14 (D.D.C. 1996) (Bureau of Prisons employee who

works at FCI Memphis, Tennessee and three Florida State Attorneys not alleged to conduct any

business or make any contracts for services and no injury alleged to have been suffered in the

District of Columbia, so court cannot exercise jurisdiction over them); <u>Dickson v. United States</u>,

831 F. Supp. 893, 897 (D.D.C. 1993) (concluding that plaintiff failed to allege minimum contacts

where he listed the District of Columbia mailing addresses at the CIA for defendants, but

presented no factual connection between the defendants' activities as individuals and the

District).

     The presence in the District of Columbia of the defendants must be "continuous and

systematic" and relative to the claim to meet the "minimum contacts" requirement.  <u>International</u>

<u>Shoe Co. v. Washington</u>, 326 U.S. 310 (1945).  In this case these non-resident defendants lack

the requisite minimum contacts with the District of Columbia because the operative facts of any

claim herein arose in Georgia and/or West Virginia.  Therefore, defendants' motions to dismiss

under Rule 12(b)(2) should be granted, and they should be dismissed from this suit.

### B.    Plaintiff Has Not Perfected Service Against Defendants Ramirez or Yark

     In an action against a federal employee in his or her official capacity, the defendant must

be served with process in accordance with Rule 4(i)(2)(A) of the Federal Rules of Civil

Procedure.  <u>Id.</u>  Rule 4(i)(2)(A) provides that service on an officer or employee of the United

States sued in an official capacity, is effectuated by serving the United States in the manner

prescribed by Rule 4(i)(1) **and by also sending a copy of the summons and complaint by**

**registered or certified mail to the officer, employee, agency, or corporation.**  In this case,

defendant "Ramirez" was never served with a copy of the summons and complaint in his official

(or individual) capacity.  See Docket No. 9.  As to defendant "A.W. Yark", although a summons

and complaint was sent certified mail to USP Atlanta, it is unclear who signed for the certified

mail receipt, as this name is not a recognizable employee of the Federal Bureau of Prisons.  See

Brinker-Fornshill Decl.

        As stated in Rule 4(m), if service of the summons and complaint is not made upon

defendant within 120 days of the filing of the complaint, the court, upon motion or on its own

initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that

defendant or direct that service be effected within a specific time.  Plaintiff filed this action

against the defendants on November 17, 2005.  The 120-day deadline expired on March 19,

2006.  Therefore, these defendants should be dismissed.

> **C.    Plaintiff Has Not Perfected Service Against the Individual Federal
>         Defendants**

        None of the individual defendants in this action were properly served with the complaint

in accordance with the rules applicable to individual defendants.  Simpkins v. District of

Columbia Government, 108 F.3d 366, 369 (D.C. Cir. 1997).  It is well established that, in an

action against a federal employee in his or her individual capacity, the individually-sued

defendant must be served with process in accordance with Rule 4(e) of the Federal Rules of Civil

Procedure.  Id.  Rule 4(e) provides that service is effectuated by complying with the laws of the

state for such in which the district court is located by delivering a copy of the summons and

complaint to the defendant (or his appointed agent) personally, or by leaving copies thereof at the

defendant dwelling house or usual place of abode with some person of suitable age and discretion

who resides there.  Fed. R. Civ. P. 4(e).  The SCR-Civil 4(e)(2) allows for service upon

individuals by first class, certified or registered mail.  Actual notice will not, of course, substitute

for technically proper service under Rule 4 and will not permit the Court to render a personal

judgment against an individually-sued defendant.  Sieg v. Karnes, 693 F.2d 803 (8th Cir. 1982);

See also Stafford v. Briggs, 444 U.S. 527 (1980).

In this case, plaintiff served some of the individual defendants at their place of

employment.  Service at the defendants' place of employment is not, however, proper service.

Because the record in this action is devoid of any evidence of proper personal service upon the

federal defendants in their individual capacities, this action cannot proceed against them

individually and all claims against the defendants in their individual capacity should be

dismissed.

The District Court will lack jurisdiction over the federal officials, until all of the

provisions of Rule 4(i)(1) and (2) are met.  Ecclesiastical Order of the Ism of Am, Inc. v. Chasin,

845 F.2d 113, 116 (6th Cir. 1988); Sanchez-Mariani v. Ellingwood, 691 F.2d 592, 594 (1st Cir.

1982).  It is the plaintiff in a civil action who has the burden of establishing the validity of

service of process.  Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476,

488 (3d Cir. 1993); Lensel Lopez v. Cordero, 659 F. Supp. 889, 890 (P.R. 1987).  Therefore, if

that cannot be demonstrated, this case should be dismissed based upon insufficiency of service of

process under Rule 12(b)(5).  Accordingly, claims against the individual defendants should be

dismissed.

### D.    Bivens Liability Does Not Extend to the BOP or DOJ

The court should dismiss plaintiff's Bivens claims against the United States and the BOP

because plaintiff may not bring a Bivens action against the United States or one of its agencies.

12

In Bivens, the Supreme Court inferred a cause of action for money damages against Federal

Bureau of Narcotics officers directly from the Fourth Amendment, which the officers had

allegedly violated under color of federal law.  Bivens v. Six Unknown Agents of Fed. Bureau of

Narcotics, 403 U.S. 388, 396-97 (1971).  The Supreme Court, in FDIC v. Meyer, unanimously

refused to extend Bivens to imply a cause of action directly against the United States or a federal

agency.  FDIC v. Meyer, 510 U.S. 471, 484-86 (1994).  The Court explained that the logic of

Bivens did not support an action directly against the Federal Savings and Loan Insurance

Corporation (FSLIC) because the Bivens decision was based partly on the fact that a direct action

against the Government was not available.  See id. at 485.  In further support of its holding, the

Court reasoned that implying a direct damages cause of action against federal agencies would

undermine Bivens' purpose of deterring officers from committing future constitutional violations

because plaintiffs would try to circumvent qualified immunity by suing federal agencies instead

of the individual officers.  See id.  Finally, the Court expressed its hesitance to extend Bivens

liability to FSLIC and other federal agencies considering the potentially enormous financial

burden such a holding could impose on the federal government.  See id. at 486.

Moreover, in deciding not to allow Bivens actions against private entities acting under

color of federal law, the Supreme Court reaffirmed the above reasoning in Meyer and noted that

inmates may not bring Bivens claims against the United States or the Bureau of Prisons.  See

Correctional Services Corp. v. Malesko, 534 U.S. 61, 72 (2001); see also Drake v. F.A.A., 291

F.3d 59, 72 (D.C. Cir. 2002) (stating that it is "well-settled" that Bivens liability cannot be

imposed on an agency of the federal government); Adeogba v. Migliaccio, 266 F. Supp. 2d 142,

145 n.2 (D.D.C. 2003) (concluding that a Bivens suit against the INS should be dismissed for

13

lack of subject matter jurisdiction because sovereign immunity prevents <u>Bivens</u> actions against

the United States and its agencies); <u>Mac'Avoy v. Smithsonian Inst.</u>, 757 F. Supp. 60, 69 (D.D.C.

1991) (noting that the <u>Bivens</u> doctrine does not apply to lawsuits brought against the federal

government and are routinely dismissed for lack of subject matter jurisdiction).  Therefore,

plaintiff's <u>Bivens</u> claim against the BOP and the United States should be dismissed under Rule

12(b)(1) for lack of jurisdiction.

### E.    *Respondeat Superior* Liability Is Not Available in <u>Bivens</u>

Additionally, defendant Harley Lappin is not personally liable for constitutional torts of

employees he supervises under the doctrine of *respondeat superior*.  <u>Monell v. Department of

Social Services</u>, 436 U.S. 658 (1978); <u>Cameron v. Thornburgh</u>, 983 F.2d 253, 258 (D.C. Cir.

1993); <u>Meyer v. Reno</u>, 911 F. Supp. 11, 15 (D.D.C. 1996).  In <u>Cameron</u>, the D.C. Circuit

dismissed the Attorney General and Director from the suit because the complaint failed to allege

their personal involvement and was based solely "on the bare assumption" that policy decisions

in the District of Columbia influenced the prisoner's treatment in a federal prison in Indiana.  <u>Id.</u>

at 258.

In the <u>Meyer</u> case, 911 F. Supp. at 15, this Court discussed *respondeat superior* within

the context of federal inmate lawsuits:

> Absent any allegations that defendants Reno and Hawk personally participated in
> the events which gave rise to the plaintiff's claims, or any corroborative
> allegations to support the inference that these defendants had notice of or
> acquiesced in the improper securing of detainers against the plaintiff by their
> subordinates, dismissal is appropriate.  See <u>Haynesworth v. Miller</u>, 820 F.2d
> 1245, 1259 (D.C. Cir. 1987) (fellow government employees cannot be held liable
> under the theory of *respondeat superior* for either constitutional or common law
> torts); <u>Smith-Bey v. District of Columbia</u>, 546 F. Supp. 813, 814 (D.D.C. 1982)
> (same). *Respondeat superior* has been consistently rejected as a basis for the

14

imposition of § 1983 or <u>Bivens</u> liability. <u>See, e.g.</u>, <u>Monell v. Dep't of Social Srvcs.</u>, 436 U.S. 658, 691 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Boykin v. District of Columbia</u>, 689 F.2d 1092, 1097-99 (D.C. Cir. 1982); and <u>Tarpley v. Greene</u>, 684 F.2d 1, 9-11 (D.C. Cir. 1982). Therefore, any potential § 1983 or <u>Bivens</u> claims against these defendants, whose only relationship to the instant litigation is their ultimate supervisory status, must be dismissed.

"Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official. A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." <u>Wolf-Lillie v. Sonquist</u>, 699 F.2d 864, 869 (7th Cir. 1983). Individual liability for damages for violation of constitutional rights is predicated upon personal responsibility. <u>Schultz v. Baumgart</u>, 738 F.2d 231, 238 (7th Cir. 1984).

Plaintiff makes no allegations to support a claim against defendant Lappin in his individual capacity. Plaintiff only vaguely claims that defendant Ramirez was "under" defendant BOP Director Lappin. <u>See</u> Compl. at 3. There is no allegation that defendant Lappin participated in any decision or approved of any policy that related to the case. Rather, just as in the <u>Cameron</u> case, the plaintiff seems to be basing his claim against the defendant in his individual capacity on an assumption that based on his position, he bears responsibility for the acts of his subordinates. This is an insufficient basis upon which to maintain a <u>Bivens</u> claim. <u>See</u> <u>Bivens v. Six Unknown Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

Therefore, defendant Lappin should be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Federal Rules of Civil Procedure, and under the Prison Litigation Reform Act.

### F.    Failure to Exhaust Administrative Remedies

Plaintiff has failed to exhaust his administrative remedies with regard to all claims raised

in this lawsuit.  Exhaustion of all stages of the administrative remedy system is mandatory before

a federal action may be commenced by a prisoner.  42 U.S.C. § 1997e(a).  The Bureau of

Prisons' three-level administrative remedy procedure is set out at 28 C.F.R. § 542.10 *et seq*., and

provides formal review of any complaint which relates to any aspect of the inmate's confinement.

Under this process, inmates are encouraged to first attempt resolution of their complaints

informally by discussing the matter with a member of their Unit Team.  A record of that attempt

 is signed by the inmate and a member of the Unit Team.  If informal resolution is insufficient to

resolve the matter, the inmate may file a formal complaint with the Warden within fifteen days of

the date on which the basis of the complaint occurred.  28 C.F.R. § 542.13.  If dissatisfied with

the response from the Warden, the inmate may appeal his complaint to the Regional Director.  28

C.F.R. § 542.15.  If dissatisfied with the Regional Director's response, the inmate may appeal to

the Director, National Inmate Appeals, in the Office of the General Counsel in Washington D.C.

28 C.F.R. § 542.14.  An inmate has not exhausted his remedies until he has sought review at all

three levels.  28 C.F.R. § 542.15(a).

In Booth v. Churner, 532 U.S. 731 (2001), the Supreme Court held that the PLRA

requires exhaustion of all administrative remedies, regardless of whether the administrative

process provides the particular relief sought by plaintiff.  The Prison Litigation Reform Act of

1995 provides that:

> No action shall be brought with respect to prison conditions under §1983 of this title, or
> any other federal law, by a prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available are exhausted.

See also Gibbs v. Bolden, 151 F. Supp. 2d 854, 857 (E.D. Mich. 2001) (to exhaust administrative

remedies under the PLRA, prisoner must file grievance against the person he ultimately seeks to

sue).  This legislation was enacted to make the exhaustion provisions mandatory.  "Exhaustion is

now required for all action[s] . . . brought with respect to prison conditions, whether under §

1983 or any other Federal law."  Porter v. Nussle, 534 U.S. 516 (2002) (internal quotations and

citations omitted).  The exhaustion doctrine "enables the agency to develop a factual record, to

apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and

is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy."

Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1094 (1st Cir. 1989) (citing McKart

v. United States, 395 U.S. 185, 194 (1969)).

        Thus, if a prisoner fails to exhaust available administrative remedies, his civil action must

be dismissed.  Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir. 1999).  See e.g., United States v.

Flanagan, 868 F.2d 1544, 1546-47 (11th Cir. 1989) (prisoner's claim that his pre-sentence

custody should have been credited against his sentence was not properly before the court because

prisoner failed to exhaust administrative remedies available through federal prison system before

seeking judicial review).

        Even where there is partial exhaustion, dismissal of a case is appropriate.  In Booth v.

Churner, 532 U.S. 731, 741 (2001), the inmate plaintiff exhausted his grievance at the first level,

but failed to complete all three levels of the Pennsylvania grievance process.  The Supreme Court

upheld the district court's dismissal of the case for failure to exhaust administrative remedies.

See also Jackson v. District of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001) ("[T]he statute

means what it plainly says," the district court held; "prisoners may only file actions under federal

law concerning their conditions of confinement after they have exhausted their prison's

administrative remedies.")

17

Moreover, where an inmate includes multiple issues concerning his prison conditions, "the plain language of [42 U.S.C.] § 1997e(a) requires that all available prison grievance remedies must be exhausted as to all of the claims." Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000). See also, Smeltzer v. Hook, 235 F. Supp. 2d 736, 742 (W.D. Mich. 2002) ("Section 1997e(a) provides, 'No action shall be brought with respect to prison conditions under section 1983 of this title. . .until such administrative remedies as are available are exhausted.' By using the word 'action' instead of 'claim,' Congress indicated that a prisoner is required to exhaust all claims before his action may proceed. . . . 'Had Congress intended to permit the piecemeal adjudication of claims relating to prison conditions, the statute would have precluded the bringing of unexhausted claims rather than action.'").

Plaintiff in this case fails to allege or demonstrate that he fully exhausted his administrative remedies through the Bureau of Prisons grievance process on all of the claims now before the court prior to bringing suit. Plaintiff has filed one administrative remedy claim relevant to this lawsuit regarding his medical care at USP Atlanta. See Brinker-Fornshill Decl. Plaintiff failed to properly file his requests for administrative remedy regarding his medical care at USP Hazelton or his challenge to the medical co-pay system, thereby failing to follow the requirements clearly detailed in 28 C.F.R. § 542.15(a). Id. Where, however, plaintiff has properly filed his remedies, they were accepted, investigated, and responded to. Plaintiff has managed to properly file requests for administrative remedy relief in the past. This behavior demonstrates plaintiff's knowledge of the exhaustion process.

The current case is the precise type of situation in which requiring exhaustion is required. Proper exhaustion would permit plaintiff to fully articulate his complaint, as well as allow the

18

Bureau of Prisons the opportunity to appropriately respond and address any concerns regarding

conditions of confinement and appropriate medical care, without prematurely requiring court

involvement.  Plaintiff has clearly circumvented the intent and the requirements of the PLRA by

not fully exhausting his administrative remedies before seeking injunctive relief.  He should not

be rewarded for doing so by reaching the merits of his complaint.

To allow inmates to proceed to litigation without requiring total exhaustion encourages

them to do so, and suggests to them that, at best the Bureau of Prisons, through its Wardens,

Regional Directors and Central Office, will not take such allegations seriously or appropriately

address inmates' needs, and at worst that these government officials would actually condone such

behavior.  Neither case exists.  To permit plaintiff to proceed will encourage him and other

inmates to attempt to circumvent the PLRA's mandatory exhaustion requirement by simply

raising similar allegations and asking for immediate injunctive relief.  No such exception to the

PLRA exists and the court should dismiss this action.

### G.     Defendant Officials May Not Be Sued for Damages In Their Official Capacities

To the extent that plaintiff seeks damages against individual defendants in their official

capacities, his claims must be dismissed absent a waiver of sovereign immunity.  Meyer v. Reno,

911 F. Supp.11 (D.D.C. 1996); Marshall v. Reno,  915 F. Supp. 426 (D.D.C. 1996); Deutsch v.

U.S. Dept. of Justice, 881 F. Supp. 49, 55 (D.D.C. 1995).  The inherent sovereign immunity of

the United States protects it and its agencies [such as the BOP] from suit absent express waiver.

See United States v. Nordic Village, 503 U.S. 30 (1992).  Sovereign immunity also bars suits for

money damages against officials in their official capacities for nondiscretionary acts absent a

specific waiver by the government.  Clark v. Library of Congress, 750 F.2d 89, 101-02 (D.C. Cir.

1984).  Plaintiff's complaint does not contain any colorable basis for such a waiver.  Therefore, to

the extent plaintiff asserts claims for damages against the defendants in their official capacities

such claims must be dismissed for lack of subject matter jurisdiction.

### H.    Individual Defendants Are Entitled to Qualified Immunity

The Bivens claims against the individual BOP defendants should also be dismissed

because they are entitled to qualified immunity.  Plaintiff is seeking monetary damages against

these defendants.  Qualified immunity, however, shields government officials from suit in

performance of a discretionary function unless that official's conduct violated a clearly

established constitutional or statutory right of which a reasonable person would have known.

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity is "an entitlement not to

stand trial or face the other burdens of litigation."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

The privilege is "an immunity from suit rather than a mere defense to liability; and like an

absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  Id.  The

D.C. Circuit, in Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998), explained:

> In short, "[a]n official is ... entitled to summary judgment [on qualified immunity
> grounds] unless '[t]he contours of the right [were] sufficiently clear that a
> reasonable official would [have] underst[ood] that what he [was] doing violate [d]
> that right.' "  Harris v. District of Columbia, 932 F.2d 10, 13 (D.C. Cir. 1991)
> (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987), aff'd, Creighton v.
> Anderson, 922 F.2d 443 (8th Cir. 1990)).
>
> By "provid[ing] government officials with the ability reasonably to anticipate
> when their conduct may give rise to liability for damages," Anderson, 483 U.S. at
> 646, the doctrine of qualified immunity strikes a balance between compensating
> those injured by official conduct and protecting the Government's basic ability to
> function.  See Harlow, 457 U.S. at 813-14.  In other words, qualified immunity is
> designed to mitigate the social costs of exposing government officials to personal

20

liability--costs such as "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." Id. at 816; see also Harris, 932 F.2d at 13. To this end, qualified immunity provides not simply a defense to liability, but also "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

In determining whether an official is entitled to qualified immunity from personal liability for money damages, there is a two-step process that must be followed by a federal court. Saucier v. Katz, 121 S. Ct. 2151 (2001). A court must always begin with this first step: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 2156. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. Therefore, if the first portion of the two-pronged test is not met, as here, there is no constitutional violation, then the defendants are entitled to qualified immunity. See Farmer v. Moritsugu, 163 F.3d 610, 613 (D.C. Cir. 1998) (no Eighth Amendment showing of deliberate indifference by BOP Medical Director; therefore, he was entitled to qualified immunity); Verdecia v. Adams, 327 F.3d 1171, 1177 (10th Cir. 2003) ("Because Verdecia cannot meet the first portion of the two-pronged test, the defendants are entitled to qualified immunity.").

### a.    Plaintiff Received Proper Medical Treatment

Plaintiff claims that the defendants violated his Fifth and Eighth Amendment rights by showing "deliberate indifference" to his claims for medical treatment. See Compl. at 3. The Supreme Court has emphasized on several occasions that a claim of deficient medical care will

not be cognizable under the Constitution unless a prisoner can show a level of dereliction so grave that it amounts to a "deliberate indifference" to the prisoner's "serious medical needs." O.K. v. Bush, 344 F. Supp. 2d 44 (D.D.C. 2004); Neitzke v. Williams, 490 U.S. 319, 321 (1989); Estelle v. Gamble, 429 U.S. 97, 104 (1976).  A prisoner challenging his medical care must be prepared to show that officials "were knowingly and unreasonably disregarding an objectively intolerable risk of harm to the prisoners' health or safety." Scott v. District of Columbia, 139 F.3d 940, 943 (D.C. Cir. 1998) (quoting Farmer v. Brennan, 511 U.S. 825, 846 (1994)).

This standard means that "courts will not intervene upon allegations of mere negligence, mistake, or difference of opinion." Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").  Absent a showing of misconduct that rises to the level of deliberate indifference, courts will not sit as boards of review over the medical decisions of prison officials, and they will not second-guess the adequacy of a particular course of treatment. Bowring, 551 F.2d at 48; see also Berman v. Lamer, 874 F. Supp. 102, 106 (E.D. Pa. 1995) ("[I]t is not in the public's interest for the court to usurp the Bureau of Prisons' authority and micro-manage the medical needs of a particular inmate.").

Plaintiff has presented no evidence that defendants were negligent or showed deliberate indifference to plaintiff's medical needs.  In fact, plaintiff produces numerous examples, attached to his complaint, of the proper care and attention he received.  Plaintiff fails to state a valid constitutional claim under the Fifth or Eighth Amendment and defendants are entitled to qualified immunity.

## I.     Plaintiffs Constitutional Claims Brought Pursuant to FTCA Are Barred

The FTCA is a limited waiver of sovereign immunity and Congress has provided only for suits against the United States.  See 28 U.S.C. § 1346(b)(1); Scanwell Lab., Inc. v. Thomas, 521 F.2d 941, 947 (D.C. Cir. 1975); Richardson v. United States Dept. of Interior, 740 F. Supp. 15, 20 n.10, 26 (D.D.C. 1990).  Agencies and individual government employees cannot be sued under the FTCA.  See 28 U.S.C. § 2679(a), (b)(1).

### a.     No Waiver of Sovereign Immunity

The Federal Tort Claims Act, 28 U.S.C. §§ 2671-80 ("FTCA"), is the exclusive waiver of sovereign immunity for any loss from the tortious actions of federal agencies or employees.  See 28 U.S.C. § 2679(b)(1); United States v. Smith, 499 U.S. 160, 165-69 (1991) (FTCA immunizes individual even where tort is excluded from waiver of sovereign immunity).  To the extent that plaintiff attempts to name defendants other than the United States in his FTCA claim, there is a limited waiver of sovereign immunity and Congress has provided only for suits against the United States.  See 28 U.S.C. § 1346(b)(1); Scanwell Lab., Inc. v. Thomas, 521 F.2d 941, 947 (D.C. Cir. 1975); Richardson v. United States Dept. of Interior, 740 F. Supp. 15, 20 n.10, 26 (D.D.C. 1990).  Agencies and individual government employees cannot be sued under the FTCA. See 28 U.S.C. § 2679(a)(b)(1).  Therefore, the Court should dismiss plaintiff's FTCA claims against all other defendants under Rule 12(b)(1) for lack of jurisdiction.

The FTCA expressly provides that any common law tort suit brought against federal employees must be treated as a suit against the United States once the Attorney General (or his delegate) certifies that the employees acted within the scope of their employment:

Upon certification by the Attorney General that the defendant employee was acting within

> the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court <u>shall</u> be deemed an action against the United States under the provisions of this title and all references thereto, and the United States <u>shall</u> be substituted as the party defendant.

28 U.S.C. § 2679(d)(1) (emphasis added).  In this case, defendants filed such a certification for the individual defendants contemporaneously with this motion to dismiss.  Therefore, the individual defendants are entitled to immunity under Section 2679.  <u>See</u> <u>United States v. Smith</u>, 499 U.S. 160, 162-63 (1991); <u>Brown v. Armstrong</u>, 949 F.2d 1007, 1010 (8th Cir. 1991).  In the place of the individual defendants, the United States is substituted as the exclusive defendant for all common law tort claims such as plaintiff's and the case against the individual defendants is dismissed.  <u>See also</u> <u>Sami v. United States</u>, 617 F.2d 755, 768 (D.C. Cir. 1979) (federal employees immune from defamation suit when acting "within the ambit of discretion"); <u>Trifax v. District of Columbia</u>, 53 F. Supp. 2d 20 (D.D.C. 1999) ("acting within the outer perimeter of the duties"), <u>aff d</u>, 314 F.3d 641 (D.C. Cir. 2003).

Automatic dismissal of the case against the individual defendants is fully consistent with the exclusivity of the tort remedies provided by the Federal Tort Claims Act, per 28 U.S.C. § 2679(b)(1).  The FTCA preempts any tort actions directly based on the common law or state law, including D.C. law, against the United States, its agencies, or employees.  <u>See</u> <u>Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution</u>, No. 74-1899, (D.C. Cir., June 28, 1976), reprinted in 566 F.2d 289 App. A-1, at 295-99; <u>Kline v. Republic of El Salvador</u>, 603 F. Supp. 1313, 1316 (D.D.C. 1985).

Additionally, the FTCA does not allow suits to be brought against government agencies like the BOP, or federal agency employees acting within the scope of their official duties.  28

24

U.S.C. § 2679(a).  See Vanover v. Hantman, 77 F. Supp. 2d 91, 97 (D.D.C. 1999), aff'd. 38

Fed.Appx. 4 (D.C. Cir. Apr 17, 2002) ("Section 2679 gives federal employees absolute immunity

from tort liability for acts done in the scope of their employment."); Cox v. Secretary of Labor,

739 F. Supp. 28, 29 (D.D.C. 1990) (suit against the Secretary of Labor rather than the

government itself must be dismissed for lack of subject matter jurisdiction) (citing numerous

cases); Galvin v. OSHA, 860 F.2d 181, 183 (5th Cir. 1988) ("an FTCA claim against a federal

agency or employer as opposed to the United States itself must be dismissed for want of

jurisdiction"); Stewart v. United States, 655 F.2d 741, 742 (7th Cir. 1981); Hagmeyer v.

Department of Treasury, 647 F. Supp. 1300, 1304-05 (D.D.C. 1986) (dismissing FTCA claim

against the Department of Treasury).  Only the United States is subject to suit under this statute.

Accordingly, plaintiff's constitutional tort claims against the BOP and the individually-named

defendants in their official capacity should be dismissed.

> **J.      Failure to State a Claim Under The P6031.02–Inmate Co-payment Program**

On October, 3, 2005, the BOP adopted a new Program Statement P6031.02–Inmate Co-

payment Program.  Within two months of the policy's implementation, plaintiff asserted a

challenge to the P6031.02–Inmate Co-payment Program on November 17, 2005.  (Notice of

Related Case, pg. 3).  Because of the recent implementation of the policy, plaintiff's challenge is

a case of first impression.  It should be noted that plaintiff did not assert any specific grounds for

challenging the policy's validity.

The Federal Prisoner Healthcare Co-payment Act of 2000 (Co-payment Act), provides

that the Bureau of Prisons, (BOP) may assess fees for health care services for prisoners.  Pub. L.

106-294, Oct. 12, 2000, 114 Stat 1038, codified as 18 U.S.C. § 4048.

On October, 3, 2005, BOP adopted program statement P6031.02–Inmate Co-payment Program, in response to the Co-payment Act; and implemented a policy to charge inmates a nominal co-payment for inmate-initiated use of health care services.  The purpose of the new program is to create an incentive for inmates to use health care services responsibly and appropriately.  (Program Statement pg. 1).  In general, the program statement provides that inmates will be charged $2.00 per health care visit.  (Program Statement pg. 2).  However, BOP excuses inmates from paying the co-payment fee in several instances, including emergency services, diagnosis or treatment of chronic infectious diseases, mental health care, and prenatal care.  (Program statement pg. 3).  If an inmate is not able to pay the co-payment fee because of indigence or lack of funds, the fee may also be waived, and the program statement provides "[i]nmates will not be denied access to necessary health care because of an inmate's inability to pay the copay fee."  (Program Statement pgs. 1, 4).  An inmate may also appeal the co-payment fee through the Administrative Remedy Program.  (Program statement pg. 3).

Over half of the states in the United States have statutes that authorize similar health care co-payment or repayment policies for inmates imprisoned in state facilities.  Some state statutes authorize the state's Department of Corrections to promulgate policies that charge fees for medical services, e.g., Colo. Rev. Stat § 17-1-113 (giving the Colorado Department of Corrections the power to set consistent co-payment fees for services); some statutes leave the designation to local governments or other state authorities, e.g., Tenn. Code Ann.§ 41-4-115 (granting local governments ability to implement a co-payment program for inmates by ordinance); N.J. Stat. Ann.§ 30: 7E-2 (giving the State Treasurer authority to set the fee), and others expressly specify a co-payment amount, e.g., Ariz. Rev. Stat. § 31-161 (2003) (setting a

charge of ten dollars per inmate-initiated visits); Cal. Penal Code § 5007.5 (setting five dollar fee).  Like the BOP's provision, the statutes often provide that an inmate should not be denied medical care because of an inability to pay, and inmates should not be denied emergency medical care.

Although plaintiff did not allege specific reasons for challenging the BOP's policy, in most instances when the state's statutes have been challenged, the state's court has upheld the validity of the statute and the co-payment fee.  For instance, in Scott v. Angelone, 771 F. Supp. 1064 (D. Nev. 1991), an inmate brought suit alleging that the Nevada Department of Prisons violated his due process when it deducted co-payment fees for medical visits, because the inmate did not receive a "pre-deprivation hearing" before the freezing of his inmate trust fund.  Id. at 1067.  A Nevada statute, Nev. Rev. Stat. 209.246, authorized the Nevada Department of Prisons to set the co-payment fee of $4 for inmate-initiated medical visits.  Id. at 1066.  After reviewing the statute, the Nevada district court upheld the validity of the co-payment program and fee, because the Department of Prisons "acted within its authority in promulgating [the regulation]." Id. at 1067.  The court remarked that the fees were only assessed in non-emergency situations, that an inmate would not be denied access because of inability to pay, and it held that the "four dollar ... charge is a 'reasonable reduction' under [the statute] to defray the cost of an inmate's medical care." Id. at 1067.

Based on the above, plaintiff has failed to state a claim and his complaint should be dismissed.

**K.     The Case Must Be Dismissed or Transferred for Improper Venue**

In contrast to an official capacity claim against a federal employee, which seeks relief

27

from the United States, an individual-capacity claim against a federal employee seeks recovery

from the personal financial assets of the employee.  Hafer v. Melo, 502 U.S. 21, 25 (1991).

Venue for plaintiff's Bivens claims is governed by the provisions of 28 U.S.C. §1391(b),

which provides in applicable part:

> (b)      A civil action wherein jurisdiction is not founded solely on diversity of
> citizenship may, except as otherwise provided by law, be brought only in (1) a
> judicial district where any defendant resides, if all defendants reside in the same
> State, (2) a judicial district in which a substantial part of the events or omissions
> giving rise to the claim occurred, or a substantial part of property that is the
> subject of the action is situated, or (3) a judicial district in which any defendant
> may be found, if there is no district in which the action may otherwise be brought.

In Stafford v. Briggs, 444 U.S. 527, 542 (1979), the Supreme Court stated that this provision,

rather than the more permissive venue provisions of 28 U.S.C. §1391(e), are applicable in Bivens

actions:

> What emerges is that the bill's author, the Committees, and the Congress intended
> nothing more than to provide nationwide venue for the convenience of individual
> plaintiffs in actions which are nominally against an individual officer but are in
> reality against the Government.  A suit for money damages which must be paid
> out of the pocket of the private individual who happens to be--or formerly was--
> employed by the Federal Government plainly is not one "essentially against the
> United States," and thus is not encompassed by the venue provisions of Section
> 1391(e).

Noting that Congress did not intend to require "those serving their Government the burden of

defending personal damages actions in a variety of distant districts. . . ," Id., 444 U.S. at 545, the

Court found that these federal officers should be treated like others who are sued for personal

damages, and the provisions of 28 U.S.C. §1391(b) should govern.

Plaintiff has provided no evidence that any of the federal defendants reside in the District

of Columbia, none of the events giving rise to the claim occurred within the District of

Columbia, and plaintiff does not reside in the District, therefore, venue is improper in the District of Columbia pursuant to 28 U.S.C. § 1391(b) and <u>Meyer v. Reno, et al.</u>, 911 F. Supp. 11, 15 (D.D.C. 1996). Plaintiff's complaint involves allegations related to his medical care that took place in Georgia and West Virginia, not in the District of Columbia. This case should therefore be dismissed under Rule 12(b)(3), Federal Rules of Civil Procedure.

To the extent that any portion of this case might withstand the PLRA dismissal arguments made below, it is inappropriately brought in the United States District Court for the District of Columbia. This is an individual claim that involves factual issues arising in the Northern District of Georgia or the Northern District of West Virginia. Nevertheless, 28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought.

The United States Court of Appeals for the District of Columbia has held that cases such as this one should <u>not</u> be heard in the District of Columbia, but should instead be transferred to the judicial district where the prisoner is incarcerated, pursuant to § 1404(a). ". . . [M]any, if indeed not most, petitions filed by prisoners not confined in the District of Columbia and not sentenced here originally, will tend to involve factors that make transfer to the place of incarceration appropriate." <u>Starnes v. McGuire</u>, 512 F.2d 918, 926 (D.C. Cir. 1974) (<u>en banc</u>). The Court of Appeals recognized that even if venue is technically appropriate, "there is certainly no reason why all cases involving the construction or constitutionality of a federal statute should be litigated in the District of Columbia." <u>Id.</u> at 925. Rather, where the records, witnesses, and counsel for the case are located near the prison and there is no issue of national importance raised

29

by the complaint, "transfer of the complaint to the district of the plaintiff's incarceration is indicated." Id. at 933; see also Lincoln v. Bureau of Prisons, Civ. No. 96-2325, at 2 (D.D.C. May 2, 1997) ("[t]his Circuit discourages 'carpetbagging' by prisoners who are incarcerated elsewhere.")

The D.C. Circuit in Starnes set out a number of factors for a district court to use in deciding whether to transfer a civil case brought by a prisoner incarcerated outside the District of Columbia. Those factors are: (1) the prisoner's difficulty of communication with counsel; (2) the difficulty of transferring the prisoner; (3) the availability of witnesses and files; (4) the speed of final resolution; and (5) whether the case involves issues of national policy that require the testimony of high-level administrators located in Washington, D.C. Starnes, 512 F.2d at 929-33.

In this case, these factors strongly support the appropriateness of transfer. This is a *pro se* case so communication with counsel is not an issue. The majority of witnesses and records that would be involved in litigating plaintiff's claims are all at USP Atlanta and USP Hazelton. To the extent this case survives dismissal, it should be transferred to the Northern District of Georgia or the Northern District of West Virginia, where plaintiff was housed when the matters giving rise to this complaint took place. It is there that most of the witnesses and documents involved are located, and where jurisdiction and venue can be readily achieved. Nevertheless, defendants urge that dismissal, not transfer, is appropriate. Compare Simpkins v. District of Columbia, 108 F.3d 366 (D.C. Cir. 1997) (appropriate to dismiss insubstantial Bivens actions versus transfer).

With regard to plaintiff's claims under the FTCA, these claims should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue. Under 28 U.S.C. § 1402(b), venue for any FTCA claim lies only in the judicial district where the plaintiff resides or

where the cause of action arose.  See 28 U.S.C. § 1402(b); Bryant v. Carlson, 652 F. Supp. 1286,

1287 (D.D.C. 1987); Bartel v. F.A.A., 617 F. Supp. 190, 198 (D.D.C. 1985).  A tort claim arises

under the FTCA at the place where the alleged negligent acts occurred.  See Beattie v. United

States, 592 F. Supp. 780, 784 (D.D.C.), aff'd, 756 F.2d 91 (D.C. Cir. 1984).

       As stated above, plaintiff currently resides in West Virginia at USP Hazelton, not in the

District of Columbia.  Moreover, the alleged negligent acts in this case occurred at USP Atlanta

and USP Hazelton, which is not within the jurisdiction of the United States District Court for the

District of Columbia.  Therefore, venue for plaintiff's FTCA claim does not lie in the United

States District Court for the District of Columbia and should be dismissed under Rule 12(b)(3).

## **CONCLUSION**

       For all of the foregoing reasons, this action should be dismissed.  If it is not dismissed, it

should be transferred to the Northern District of Georgia pursuant to 28 U.S.C. §1404(a).

                          Respectfully submitted,


                          ___/s/_____
                          KENNETH L. WAINSTEIN, D.C. BAR # 451058
                          United States Attorney


                           ___/s/_____
                          RUDOLPH CONTRERAS, D.C. BAR # 434122
                          Assistant United States Attorney


                          ___/s/_____
                          JOHN F. HENAULT, D.C. Bar # 472590
                          Assistant United States Attorney
                          Judiciary Center Building
                          555 4th Street, N.W. – Civil Division
                          Washington, D.C.  20530
                          (202) 307-1249; (202) 514-8780 (facsimile)

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the10th day of April, 2006, I caused service of the

foregoing to be made on the *pro se* plaintiff:

Frank Skinner
#02727-025
Hazelton USP
P.O. Box 450
Inmate Box No. 2000
Bruceton Mills, WV 26525


___/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney